## Case No. 4,380.

In re ELLERHORST et al.

[2 Sawy. 219;[1] 7 N. B. R. 49.]

Circuit Court, D. California. June 24, 1872.

Wm. H. Patterson, for appellant.

H. C. Hyde, for appellee.

SAWYER, Circuit Judge. The appellant claims that the order confirming the sale is erroneous in requiring him to pay the expenses of the sale, to wit: $436.85 commissions of the auctioneers, and $295 commissions of the assignees, amounting in the aggregate to $731.85, as a condition of obtaining his conveyance. He insists that his lien being prior to all other claims must be first satisfied; that he afforded every facility in his power to enable the assignees to realize

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

something over his demand, and, failing in this, he offered to take the property in satisfaction, without presenting a claim against the bankrupt's estate for any deficiency, which offer was declined; that he then asked leave to proceed and foreclose his mortgage in the usual way, making the assignees parties; that this was refused by the court, and the order then made under which the sale was had; that this was an unnecessary proceeding by way of experiment for the benefit of the estate; that the court and assignees having experimented for the benefit of the estate it ought to be at the cost and risk of the estate, and not at his cost and risk.

There seems to be great force in this position. But is it a question of legal right, or is it only a matter addressed to the sound discretion of the court, in the apportionment of the costs incident to the administration of the assets of the bankrupt? The fourteenth section of the bankrupt act [of 1867 (14 Stat. 522)] expressly provides that "no mortgage" of the kind in question "shall be invalidated or affected hereby." So far as the right is concerned, then, the appellant stands in the same position with reference to the property, that he would occupy if no act of bankruptcy had been committed. But the remedy under the provisions of the bankrupt act has now been modified, and it is to be either sought in, or pursued under, the supervision of a new jurisdiction. Section 1 of the said act extends the jurisdiction of the district courts "to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties; and to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties and due distribution of the assets among all the creditors," etc. These powers are very broad, and extend to the whole subject matter of the bankrupt's property, and the claims against, and liens upon, it. It authorizes the district court to adjust the rights of the various creditors, liquidate the liens upon the assets, and this necessarily includes power to ascertain what liens there are, their amount, and to pay them off, and as incident to payment and distribution a power of sale for their conversion into cash in order that the liens may be liquidated or paid, and the surplus carried into the general fund.

Section 20 also provides that, "when a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon, for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt, after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court shall direct; or the creditor may release or convey his claim to the assignee upon such property, and be admitted to prove his whole debt. If the value of the property exceeds the sum for which it is so held as security, the assignee may release to the creditor the bankrupt's right of redemption therein on receiving such excess; or he may sell the property subject to the claim of the creditor thereon, and in either case the assignee and creditor, respectively, shall execute all deeds and writings necessary or proper to consummate the transaction. If the property is not so sold or released and delivered up, the creditor shall not be allowed to prove any part of his debt."

This provision recognizes the power of the court to order a sale of property mortgaged "to be made in such manner as the court shall direct," as a test of the value of the property in order to allow the lien-holder to prove the balance of his debt when he desires to do so. In this case Himmelmann did not ask leave to prove his debt as a general creditor, but he did ask leave to enforce his lien by suit to foreclose his mortgage in the usual way. Had the court granted leave, the expenses of the foreclosure and sale would have been deducted from the proceeds of the sale, and he would only have received the balance; or, had he been the purchaser himself, and the property had failed to bring the amount of his debt, he would have been required to pay the expenses of foreclosure and sale, in the same manner as he is now required to do by the order of the court of which complaint is made.

The record shows that the sheriff's commissions alone on a sale would have been about six hundred dollars, and there would have been other costs and charges in a foreclosure suit, so that the expenses of a foreclosure and sale in the ordinary mode would have been nearly, if not quite, as large as they were in the proceedings had. It also appears, that under the covenants in the mortgage, by such foreclosure the demand would have been increased by the addition of some $3,000 as counsel fees; thus by that mode largely increasing the lien, to the injury of other creditors, in case the property should bring more than the principal, interest, and ordinary costs of foreclosure.

I do not think the appellant could demand, as a matter of right, that the assignees should convey to him upon his offer the premises, on condition of his agreeing not to present a claim for any part of the debt against the other assets of the bankrupt. Nor do I think their refusal to accede to his proposition, or the refusal of the court to permit them to accept, must be at the peril of throwing the costs of any effort to secure a better price upon the other creditors. It was the duty of the assignees and of the court to take that course in the premises, within their jurisdiction, which, in their judgment, having due reference to the rights of the mort-

gagee, would be most beneficial to all the parties interested.

After a careful examination of the bankrupt act, I have reached the conclusion that the district court was authorized, either to grant leave to the appellant to proceed in the usual way to foreclose his mortgage, making the assignees parties, or to take upon itself the duty of ascertaining and liquidating the lien by a sale of the property mortgaged, and applying the proceeds in payment. It might also under the provisions of the seventeenth or twentieth sections have sold the mortgaged premises subject to the lien, and left the mortgagee to proceed to a foreclosure against the purchaser, or even to have released the equity of redemption to the mortgagee in satisfaction of his debt, as was proposed by him. The court had jurisdiction to pursue either of these courses, as it should judge best for the interest of all concerned. It is not claimed by appellant that the court exceeded its authority in adopting the mode pursued. No question of this kind has been raised. The only point made is that the court, under the circumstances should have charged the expenses of the proceeding on the other assets of the bankrupt, and not have taken them out of the proceeds of the mortgaged property, thereby diminishing the amount received by the mortgagee on his debt. The court having acted judicially according to its best judgment, I do not think the appellant has any just legal ground of complaint at the course pursued. It was a matter of judicial discretion, and I am not prepared to say that the discretion of the court was not soundly exercised upon the facts as they were at the time presented. So, also, the apportionment of the costs was a matter to some extent of judicial discretion. The items of cost directed to be deducted from the purchase money were not costs of the general administration of the bankrupt's estate, but only the costs resulting from the ascertainment, enforcement and liquidation of the specific lien of the appellant in the form of proceeding adopted. This proceeding was substantially one mode of foreclosing the mortgage. A very nearly similar amount of costs would have accrued to be deducted from the purchase money, had the appellant been permitted to foreclose and sell in the manner requested in his petition. Besides this a sum of about three thousand dollars more would, in that mode have been added to his demand as counsel fees, under the covenants in the mortgage.

The district court as incident to its power to adjust and liquidate the lien, was authorized to adjust the costs of the proceedings necessary to give effect to the specific lien, and I am not satisfied that it exceeded the bounds of sound discretion in charging upon the proceeds of the mortgaged property the costs of the proceedings adopted to enforce and liquidate the specific lien in question, and especially so, as the costs varied but little in amount from what they would have been, had the ordinary proceedings of foreclosure been allowed. I find nothing to justify a reversal or modification of the order appealed from. It must, therefore, be affirmed, and it is so ordered.